<u>**FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | Chapter 15 |
| | : | |
| FAIRFIELD SENTRY LIMITED, et al., | : | Case No. 10-13164 (CGM) |
| | : | |
| Debtors in Foreign Proceedings. | : | Jointly Administered |
| | : | |

------------------------------------------------------------X

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation | : | |
| Of Bernard L. Madoff Investment Securities LLC, | : | Adv. Pro. No. 10-03800 (CGM) |
| As assignee of Fairfield Sentry Limited, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FAIRFIELD GREENWICH GROUP, FAIRFIELD | : | |
| GREENWICH (BERMUDA) LIMITED, | : | |
| FAIRFIELD GREENWICH ADVISORS, LLC, | : | |
| FAIRFIELD GREENWICH LIMITED, | : | |
| FAIRFIELD INTERNATIONAL MANAGERS, | : | |
| INC., WALTER M. NOEL, JR., JEFFREY | : | |
| TUCKER, ANDRÉS PIEDRAHITA, | : | |
| AMIT VIJAYVERGIYA, PHILIPTOUB, AND | : | |
| CORINA NOEL PIEDRAHITA, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------X

| | | |
|---|---|---|
| FAIRFIELD GREENWICH (BERMUDA) | : | |
| LIMITED, | : | |
| | : | |
| Third-Party Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| FAIRFIELD SENTRY LIMITED (IN | : | |
| LIQUIDATION), | : | |
| | : | |
| Third-Party Defendant. | : | |

------------------------------------------------------------X

## MEMORANDUM DECISION DENYING DEFENDANTS' MOTION TO DISMISS IN PART

**A P P E A R A N C E S :**

BAKER HOSTETLER
Attorneys for Plaintiff Irving Picard, SIPA Trustee
45 Rockefeller Plaza
New York, NY 10111
BY: ERIKA THOMAS (TELEPHONICALLY)

SIMPSON THACHER & BARTLETT LLP
Attorneys for Defendants Fairfield Greenwich Limited, Fairfield
Greenwich Bermuda Limited, Fairfield Greenwich Advisors LLC,
Fairfield International Manager's Inc., Amit Vijayvergiya,
Philip Toub and Corina Noel Piedrahita
425 Lexington Avenue
New York, NY 10017
BY: PETER KAZANOFF (TELEPHONICALLY)

DECHERT LLP
Attorney for Defendant Andres Piedrahita
Three Bryant Park, 1095 Avenue of the Americas
New York, NY 10036
BY: ANDREW LEVANDER (TELEPHONICALLY)

WHITE & CASE LLP
Attorneys for Defendant Walter Noel
1221 Avenue of the Americas
New York, NY 10020
BY: ANDREW HAMMOND (TELEPHONICALLY)

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding arises out of the aftermath of the Bernard L. Madoff

Investment Securities LLC's Ponzi scheme. The original plaintiff, the largest feeder fund

invested in BLMIS, filed its own liquidation proceedings in the British Virgin Islands following

the collapse of BLMIS and, by extension, its own investment business. Through this proceeding,

the Trustee seeks to recover over $919 million in management and performance fees (plus

interest, costs, and attorneys' fees and disbursements), it claims were wrongly paid to Defendants

on account of Defendants' knowing participation in BLMIS's fraudulent scheme.  As such, the

Trustee alleges breach of contract against FG Limited and FG Bermuda as well as unjust

enrichment and constructive trust claims against all Defendants.  Defendants moved to dismiss

the operative complaint in this action on grounds that the Trustee had failed to state claims and

for lack of personal jurisdiction.  For the reasons set forth in more detail below, the Court grants

Defendants' motion to dismiss with respect to the unjust enrichment claims, found in count four,

against FG Limited and FG Bermuda, and denies the remainder of Defendants' motion to

dismiss.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C.

§ 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated

January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(P) (recognition of

foreign proceedings and other matters under chapter 15 of title 11). Personal jurisdiction issues

raised by two of the Defendants are addressed within the body of this decision.

## Background[1]

Fairfield Sentry Limited ("Fairfield Sentry," "Sentry," or "Debtor") was the largest

"feeder fund" to have invested in Bernard L. Madoff Investment Services, LLC ("BLMIS"), the

now infamous Ponzi scheme run by Bernie Madoff ("Madoff").  Sentry invested virtually all of

its assets with BLMIS directly or indirectly, and the value of Sentry's assets was derived from

the value of their BLMIS investments.  It is now established that BLMIS did not differentiate or

---

[1] Unless otherwise noted, the background facts were taken from *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2018 WL 3756343, at *1 (Bankr. S.D.N.Y. Aug. 6, 2018), and have been summarized for informational purposes only.

invest monies deposited by investors.[2]  Rather, all of Sentry's monies were comingled in three

bank accounts and, as is typical in any Ponzi scheme, "investments" were used to pay

withdrawals made by other customers.

Sentry ceased making redemption payments after Madoff's arrest.  Shortly after the

collapse of BLMIS, certain of the Sentry's creditors and shareholders commenced insolvency

proceedings against Sentry[3] in the Commercial Division of the Eastern Caribbean High Court of

Justice, British Virgin Islands ("BVI Court").  The BVI Court appointed liquidators of Sentry,

who commenced ancillary proceedings in this Court under chapter 15 of the Bankruptcy Code to

obtain recognition of the BVI liquidation proceedings as "foreign main proceedings."  The Court

granted the Liquidators' recognition applications on July 22, 2010.

Unlike the hundreds of actions brought against entities and individuals who, prior to the

disclosure of the BLMIS fraud, received payments upon the redemption of shares issued by the

chapter 15 debtors (the "Redeemer Actions"),[4] this complaint in unique.  The Trustee seeks the

return of management and performance fees allegedly paid by Sentry to the Defendants via

breach of contract, unjust enrichment, and constructive trust claims.  SAC ¶ 3, ECF[5] No. 90, Ex.

1. (attached as exhibit 1 to the motion for leave to file a second amended complaint).

The action was originally filed in New York Supreme Court on May 23, 2009 by the

Foreign Representatives.  Or. Transferring Case, ECF No. 1.  It was removed to the District

Court for the Southern District of New York and then referred to this Bankruptcy Court. *Id.*  At

the same time, Irving Picard, the trustee for the liquidation of BLMIS ("Trustee") under the

---

[2] *See, e.g.*, *Picard v. JABA Assoc. LP (In re BLMIS)*, No. 20-cv-03836-JGK, slip. op. at 33 (S.D.N.Y. Mar. 24, 2021) ("There is no genuine dispute of material fact that BLMIS operated a Ponzi scheme.").
[3] Along with Fairfield Sigma Limited and Fairfield Lambda Limited.
[4] For additional background on Debtor's chapter 15 case and the redeemer actions, please see *Fairfield Sentry Ltd. v. Amsterdam (In re Fairfield Sentry Ltd.)*, No. 10-13164, 2020 WL 7345988, at *1–*2 (Bankr. S.D.N.Y. Dec. 14, 2020).
[5] Unless otherwise noted, ECF refers to the electronic docket of 10-03800-cgm.

Securities Investor Protection Act ("SIPA") filed an action against Sentry and other defendants in the SIPA proceeding. *See Picard v. Fairfield Sentry Ltd. (In re Fairfield Sentry, Ltd.)*, No. 09-01239 (CGM). In 2011, the Trustee and the Foreign Representatives entered into a settlement agreement that, among other things, assigned to the Trustee the claims asserted by Sentry in this adversary proceeding. *See* Or. Approving Agreement, No. 09-01239 (CGM), ECF No. 95. On January 24, 2019, this Court entered a stipulated order agreed to by the Trustee, the Foreign Representatives, and the Defendants, that, among other things, substituted the Trustee as the plaintiff in this adversary proceeding. So Or'd Stip., ECF No. 87.

On February 22, 2019, the Trustee filed a motion for leave to file a second amended complaint ("SAC" or "Complaint"). Mtn. for Leave, ECF No. 90. Rather than oppose that motion, Defendants filed this motion to dismiss the proposed second amended complaint ("Motion to Dismiss"). Memo. of Law in Support of Mtn. Dismiss at 1 n.1, ECF 99 ("Defendants do not oppose the motion to amend the operative complaint . . . .").

The Motion to Dismiss and the related filings were filed by Defendants on April 23, 2019. ECF Nos. 98, 98, 100, 101. The Trustee's opposition was filed on September 23, 2019. ECF. Nos. 118, 119, 120, 121. Thereafter, the parties entered mediation, which was unsuccessful and Defendants' reply papers were filed on October 2, 2020. ECF Nos. 129, 130. The Court also permitted additional briefing for issues that were raised for the first time in the reply and asked the parties to confer and file letters indicating whether they agreed to any choice of law. ECF Nos. 141, 142, 143, 145, 146, 149.

The Court held oral argument on this motion on February 10, 2021 and took the motion to dismiss under advisement. *See* Tr. of Feb. 10, 2021 Hr'g, ECF No. 158. At that hearing, the

Court granted the Trustee's motion for leave to file the SAC and, as such, the SAC is the operative complaint. *Id.* at 8:25.

## Discussion

Defendants move to dismiss the Complaint under Federal Rule of Civil procedure 12(b)(6) for failure to state a claim for which relief may be granted. Defendants have also argued that the Court does not have personal jurisdiction over two of the Defendants, which is discussed herein. *See infra* pt. h.

In deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), the Court "assume[es] all 'well-pleaded factual allegations' to be true." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 104 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto" need not be accepted. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). Similarly, "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'" *Achtman v. Kirby McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)). Rather, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

On a motion to dismiss, the issue is not whether the plaintiff will prevail, but whether the plaintiff may present evidence to support the claims. The Court must construe the factual allegations in the complaint liberally in favor of the plaintiff. The complaint must set forth

sufficient information for the court to determine whether some recognized legal theory exists to

permit relief to the plaintiff.  2 Moore's Federal Practice, § 12.34 (Matthew Bender 3d ed.).

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule

12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of

the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).  Where

discovery is needed to fully develop the merits of both parties' claims and defenses, dismissal is

not appropriate at the motion to dismiss stage.  *See Bice v. Robb*, 324 Fed. Appx. 79, 81 (2d Cir.

2009) (reversing and remanding because the "court was obligated to give the plaintiffs the

opportunity for full discovery to determine whether there was a genuine issue as to any material

fact relating to timeliness" because "the question of whether the statute of limitations has run

turns on a number of unresolved issues that would benefit from discovery") (cleaned up).[6]

For reasons set forth in more detail herein, and with one exception, the Complaint

contains sufficient allegations to survive a motion to dismiss.

### a) First Claim: Breach of Contract Against FG Limited

The parties agree that this cause of action is governed by New York law and New York

law will be applied to this cause of action.  2002 IMA ¶ 14 ("This Agreement shall be construed

and governed in accordance with the laws of the State of New York, without regard to the

principles of conflicts of laws thereof."); *see also* Ltr. to C.J. Morris, ECF No. 145 ("The parties

have conferred and report that to date we have agreed that New York law governs the First

Claim . . . ."); *The Tehran-Berkeley Civil & Envtl. Engineers v. Tippetts-Abbett-McCarthy-*

*Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) ("Under the principle that implied consent to use a

---

[6] Use of "(cleaned up)" in this decision signals that the Court has removed extraneous, non-substantive clutter (such as brackets, quotation marks, ellipses, footnote signals, internal citations) or has made un-bracketed changes to capitalization to improve readability without altering the substance of the quotation.  *See, e.g.*, *Brownback v. King*, 592 U.S. ___, 141 S. Ct. 740, 748 (2021).

forum's law is sufficient to establish choice of law, we will apply New York law to this case.")
(cleaned up).

Under New York law, there are four elements to a breach of contract claim: "(1) the
existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach
of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio
Serv'g, Inc.*, 837 F. Supp. 2d 162, 188–89 (S.D.N.Y. 2011) (citing *Harsco Corp. v. Segui*, 91
F.3d 337, 348 (2d Cir.1996)).  To survive a motion to dismiss, the "plaintiff must identify
wh[ich] provisions of the contract were breached as a result of the acts at issue." *Id.* at 189.

The provision alleged to be breached is the second line of paragraph two of the 2002
IMA which states: "The Investment Manager shall use its best efforts to monitor the activities
and performance of BLM and any Non-BLM Investments." 2002 IMA ¶ 2.  The "Investment
Manager" is defined in the introductory paragraph of the 2002 IMA as "Fairfield Greenwich
Limited."  2002 IMA.

The Complaint: (1) identifies the 2002 IMA as the agreement (SAC ¶ 226); (2) alleges
that Plaintiff "performed all of its obligations under the 2002 IMA" (SAC ¶ 227); (3) alleges that
FG Limited breached the 2002 IMA "by failing to use its best efforts to monitor Sentry's BLMIS
investments, including without limitation BLMIS's activities and performance" (SAC ¶ 229);
and (4) alleges that damages were incurred in the amount of "all fees paid" by Plaintiff  to FG
Limited under the 2002 IMA (SAC ¶ ¶ 232–33).

Defendants argue that FG Limited cannot be held liable for performing its duties under
the contract and that the IMAs required the Investment Manager to invest in BLMIS funds and
employ the split-strike strategy used by BLMIS.

The 2002 IMA states: "Such management will include, but shall not be limited to maintaining the account established in the name of the Fund at Bernard L. Madoff Investment Securities, Inc., a broker dealer registered with the Securities and Exchange Commission, in New York, New York ("BLM"), for the purpose of trading in equity securities and options on securities, and to investing assets of the Fund in Non-BLM investment vehicles." 2002 IMA ¶ 1. Additionally, the 2002 IMA requires "All investments of the Fund shall at all times conform to and be in accordance with the requirements imposed by . . . any provisions of applicable law." 2002 IMA ¶ 5(a).

FG Limited argues that the exculpation clause of the 2002 IMA prevents it from being liable for breach of contract. The exculpation clause allows FG Limited to be held liable for "any error of judgment or for any loss suffered by the Fund . . . resulting from willful malfeasance, bad faith, gross negligence in the performance of the Investment Manager's obligations and duties, or by reason of the Investment Manager's reckless disregard of their obligations and duties hereunder." 2002 IMA ¶ 9(a). The 2002 IMA also provides that FG Limited is not entitled to indemnification from Plaintiff for "any loss suffered by the Fund . . . to the extent that such act or omission constitutes willful misconduct, or reckless disregard of the duties of the Investment Manager." 2002 IMA ¶ 9(b).

The Trustee alleges that FG Limited either knew or failed to detect that BLMIS was not trading in security equities or doing any legitimate investing. The Complaint is littered with allegations of the wrongful conduct of FG Limited. The Trustee alleges that FG Limited "never had employees in, nor did it ever maintain an office in, Ireland or Cayman." SAC ¶ 53. The Complaint also contains allegations that the corporate structure of FG Limited was created as a means of churning fees for the individual owners. SAC ¶¶ 48, 65, 72, 73. The Trustee alleges

that FG Limited had knowledge of Madoff's Ponzi scheme (imputed through Noel, Tucker, Piedrahita, Lipton, McKeefry, Blum, and Toub). SAC ¶ 68.  And the knowledge that each of these individuals had regarding the Ponzi scheme is also well-pled.  Prior to the 2002 IMA being executed, it is alleged that those individuals knew that Madoff was operating a fraudulent scheme and tried to cover that up from their investors. *See* SAC ¶¶ 87–93.  For example, it is alleged that in 1996, an independent contractor found that the trading activity in Plaintiff's account was higher than any trade activity that had taken place for that day. SAC ¶¶ 95–98.  This information was allegedly reported to those individuals, those whose knowledge is alleged to be imputed to FG Limited. *Id.*

The Complaint clearly sets forth the elements for breach of contract and it is not clear from the face of the Complaint that the exculpatory and indemnity clauses bar this action.  Even if this Court could determine that FG Limited complied with one of its duties under the agreement, that does not preclude it from having breached a different provision of the Agreement.  Whether the Agreement was breached and whether the exculpation or indemnification clauses apply constitute issues of fact.  Defendants' Motion to Dismiss this cause of action is denied.

**b)  Second Claim: Breach of Contract Against FG Bermuda**

Although both parties ask this Court to apply Bermuda law to the second and third causes of action, neither party provided the elements of breach of contract under Bermuda law. *See* Ltr. to C.J. Morris, ECF No. 145 ("The parties have conferred and report that to date we have agreed that . . . Bermuda law governs the Second and Third Claims . . . .").  Federal Rule of Civil Procedure 44.1, made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 9017, governs determinations of foreign law in federal court.  It states:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1.  Rule 44.1 permits courts to conduct their own independent research to determine foreign law "but imposes no duty upon them to do so." *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 481 (4th Cir. 2009).

"Thus, the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the . . . court to apply it in a particular case." *Bigio v. Coca-Cola Co.*, No. 97 Civ. 2858 (BSJ), 2010 WL 3377503, at *4 (S.D.N.Y. Aug. 23, 2010) (quoting *Baker*, 358 Fed. Appx. at 481).  "Written or oral expert testimony accompanied by extracts from various kinds of foreign legal materials remains the basic mode of proving foreign law."  *Id.*

The parties did not provide the Court with the elements necessary to evaluate a claim for breach of contract claim under Bermuda law nor was any expert testimony provided.  When questioned about this at oral argument, both parties relied on one line from Chitty on Contracts: "The general rule is that a party to a contract must perform exactly what he undertook to do." (Thirty-Third Edition), Chapter 21–001; *see also* Tr. at 25:15–26:9 ("I think we have laid that out in the Chitty on Contract citations, where we've said it's the -- it's performing under -- performing what the party to the contract agreed to do.") & 39:15–16 ("[T]here's no dispute with respect to the Chitty provision").  This sentence is an insufficient recitation of a foreign legal standard for breach of contract.

This Court has conducted its own research into the matter and has found that Bermuda courts continue to rely on, *Hadley v. Baxendale*, a leading English contract law case for

determining consequential damages from a breach of contract.[7] [1854] EWHC (Exch.) J70, 156 Eng. Reps. 145 (Eng. & Wales High Ct.). *Hadley* sets forth the following elements for a breach of contract claim: 1) existence of a contract; 2) performance by one party; 3) breach by the other party; 4) damages. *Id.*; *see also Smooth & Easy Ltd. v. Richardson*, [2019] S.C. 61 Civ (Berm.) (referring to *Hadley* for determination of damages in a breach of contract action).

Where there is no conflict between a forum's law and foreign law, a court normally applies the law of the forum. This is true especially where the parties have not demonstrated that the elements of the claim differ under the foreign law. *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 573 n.7 (S.D.N.Y. 2018). Despite this, the Court will apply Bermuda law to the second and third causes of action for two reasons: 1) the parties have agreed that Bermuda law applies; and 2) the relevant Agreements contain Bermuda choice-of-law provisions. *The Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) (consent to use a forum's law is sufficient to establish choice of law); *Certain Underwriters at Lloyd's v. New Dominion. LLC,* No. 16 CV 5005 DLC, 2016 WL 4688866, at *4 (S.D.N.Y. Sept. 7, 2016) ("A choice of law provision serves as a 'substitute for the conflict-of-laws analysis that otherwise would determine what law to apply' and is generally enforced.") (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466, 468 (2015)).

Defendants argue that under Bermuda law, a party cannot breach a contract by fulfilling its provisions. That is not what the Trustee has alleged in the Complaint. The Trustee alleges that FG Bermuda breached the 2003 IMA "including without limitation using its best efforts to:

---

[7] "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." *Hadley v. Baxendale*, [1854] EWHC J70. *Hadley* has also greatly influenced contract law in the United States. *See Howard v. Stillwell & Bierce Mfg. Co.*, 139 U.S. 199, 207 (1891) (referencing *Hadley*).

(a) seek suitable investment opportunities and manage Sentry's investment portfolio; (b) perform or oversee Sentry's day-to-day investment operations; (c) act as Fairfield Sentry's investment adviser; (d) provide information in connection with the preparations of all reports to Fairfield Sentry's shareholders described in Fairfield Sentry's Confidential Private Placement Memorandum dated July 1, 2003; and (e) arrange for and oversee the services of Fairfield Sentry's administrator, custodian, auditors, and counsel." SAC ¶ 237; *see also* 2003 IMA ¶ 2.

In addition to the aforementioned allegations relating to the first cause of action alleged to have been known prior to July of 2003 when the contract between FG Bermuda and Plaintiff was signed, the Complaint contains allegations that later in 2003 emails circulated amongst the upper management contained additional red flags. It is alleged that the Société Generale "won't approve [Fairfield] Sentry from a due diligence standpoint" because of "'collusion' between the manager and the prime broker"—Madoff—and that Madoff was not recommended for investment and that there was a lot of skepticism about Madoff's ability to produce his stated returns. SAC ¶ 120. It is alleged that rather than investigate these concerns, FG Bermuda, through its agents, attempted to cover up the issues raised, in contravention of its duty to "oversee," "advise," "inform," and "seek suitable investments" for Plaintiff. SAC ¶ 78; 2003 IMA ¶ 3.

Defendants argue that the contract places responsibility for FG Bermuda's actions on Plaintiff's directors. 2003 IMA ¶ 2 ("The activities engaged in by the Investment Manager on behalf of the Fund shall be subject to the policies and control of the Fund's Directors."). This demonstrates that an issue of fact may exist as to who made the ultimate decision to invest. It does not mean that the Plaintiff has not alleged a satisfactory cause of action in the Complaint.

Defendants also argue that the exculpation clauses bar this cause of action. Like the ones contained in the 2002 IMA, the exculpation and indemnification clauses contain exceptions for "willful misfeasance, bad faith or gross negligence in the performance of the Investment Manager's obligations and duties . . . ." and "willful misconduct, or reckless disregard of the duties of the Investment Manager . . . ." 2003 IMA ¶ 9.

The Trustee argues that the exculpations are not enforceable under Bermuda law.  As described above, what Bermuda law requires was not adequately briefed by either party. However, there are sufficient allegations pled in the SAC to show that FG Bermuda acted in a way that may have violated the exculpation and indemnification clauses as written, whether or not they are barred by Bermuda law. The parties are free to reargue whether the clauses are enforceable at a later stage of litigation—so long as they properly educate the Court as to the intricacies of Bermuda law on this issue. This cause of action cannot be dismissed at this time.

### c)  Third Claim: Breach of Contract Against FG Bermuda

The third cause of action in the Complaint, is a breach of contract claim against FG Bermuda. The Trustee alleges that FG Bermuda breached its 2004 IMA.  For the same reasons that the breach of the 2003 IMA has survived, this cause of action must also survive. *See* 2004 IMA ¶ 2 (the clause allegedly breached by Defendant); *see also* ¶¶ 10 (exculpation clauses subject to "willful misfeasance, bad faith or gross negligence").

### d)  Fourth Claim: Unjust Enrichment Against All Defendants

Defendants argue that the Trustee's unjust enrichment claim "is precluded by the written IMAs covering the same subject[,]" and claims that New York applies to the claim.  Memo of Law at 8 & 18, ECF No. 99.  The Trustee disagrees that the claim is precluded, arguing that BVI law applies to the claim.

"Federal courts apply the choice-of-law rules of the state in which they are located. New York courts engage in a choice-of-law analysis where an actual conflict exists between the laws of the relevant jurisdictions. An actual conflict arises where the law of each jurisdiction provides different substantive rules, and the differences are relevant and have a significant possible effect on the outcome of the trial, although they need not lead to different outcomes." *Hau Yin To v. HSBC Holdings, PLC*, 700 F. App'x 66, 68 (2d Cir. 2017) (cleaned up).

There appears to be no actual conflict between the elements of an unjust enrichment claim in New York and BVI law. *Compare Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, 973 N.E.2d 743, 746, N.Y.S.2d 333, 336 (2012) ("(1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered"); *with Fraunteld Mgmt Ltd.v. Featherwood Trading Ltd.*, [2012] BVI High Ct. (Comm) 2010/0103, at ¶ 57 ("(1) Has D[efendant] been benefited or enriched? (2) Was the enrichment at the expense of C[laimant]? (3) Was the enrichment unjust? (4) Are there any defen[s]es?").  The potential conflict as raised by the parties is whether unjust enrichment can be claimed when there is a breach of contract claim on the same subject, including against non-signatories.

"A party may not recover in unjust enrichment where the parties have entered into a contract that governs the subject matter." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234, 982 N.E.2d 576, 580, 958 N.Y.S.2d 656, 660 (2012) (cleaned up). "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract. New York courts have declined to dismiss quasi-contract claims in cases involving written contracts only where defendants have acted in such a way as to incur obligations to the plaintiff outside the contract." *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 CIV.

1537 (MBM), 2003 WL 23018888, at *17 (S.D.N.Y. Dec. 22, 2003) (cleaned up), *aff'd*, 110 F.

App'x 191 (2d Cir. 2004); *see also U.S. East Telecomms., Inv. v. US West Comm. Servs., Inc.*, 38

F.3d 1289, 1297 (2d Cir. 1994).

The Trustee has pled that Defendants have been unjustly enriched because "Fairfield

Sentry paid management and performance fees directly to" some Defendants and the others "all

received a proportionate share, *or a contractually agreed percentage*, of the management and

performance fees paid[.]" SAC ¶ 252 (emphasis added).  The unjust enrichment claim is entirely

rooted in the contractual obligations. Under New York law, the unjust enrichment claim would

be precluded against all defendants as pled.

Under BVI law, "a claimant which was itself a party to the contract will be denied a right

to restitution, and will be obliged to rely on the right prescribed under the contract in relation to

payments made under the contract." *Featherwood Trading Ltd. v. Fraunteld Mgmt. Ltd.*, [2013]

BVI High Ct. VAP 2012/0020, at ¶ 6 (E. Caribbean S. Ct., Ct. of App.) (appeal from the BVI

trial court, commercial division).  As for claims against third parties, while plaintiffs are

typically limited to the direct recipients, exceptions exist, as there "are cases in which, for the

purpose of answering the 'at the expense of' question, the court has treated a set of related

transactions, operating in a co-ordinated way, as forming a single scheme or transaction, on the

basis that to answer the question by considering each of the individual transactions separately

would be unrealistic." *Inv. Tr. Cos. (in liq.) v. HMRC*, [2017] UKSC 29, at ¶ 61.

Defendants have provided no authority that would preclude the Trustee from recovering

on his unjust enrichment claim under BVI law against Defendants other than FG Limited and FG

Bermuda.  Whether the other Defendants meet any unknown exceptions needs a fact-intensive

inquiry beyond the scope of what has been presented by Defendants.

There appears to be no conflict as to whether FG Limited and FG Bermuda, as the signatories to the contracts, can be held liable for unjust enrichment based on their respective contracts. They cannot. The (potential) conflict lies in whether the Trustee may pursue the other Defendants. That conflict could still be abated by Defendants' argument that unjust enrichment cannot lie against any of Defendants under BVI law, as it "precludes recovery for unjust enrichment where the at-issue payments are predicated on a [Net Asset Value ("NAV")] that Defendants did not know was accurate," citing *DD Growth Premium 2X Fund v. RMF Market Neutral Strategies (Master) Ltd.*, [2017] UKPC 36, at ¶ 64.

As argued, *DD Growth* is misplaced. That case involved redemption payments, *id.* at ¶ 61, as did the *Amsterdam* case.[8] In this case, the Trustee is seeking the recovery of management and performance fees paid to entities and individuals with inside information. Even assuming that the Defendants have cited the correct standard and that the Trustee is required to plead and prove knowledge of an incorrect NAV—which this Court does not decide at this time—the sum total of what the Trustee has alleged was known to Defendants is sufficient to survive a motion to dismiss. *See, e.g.*, SAC ¶¶ 125, 129, 133, 149, 153, 195, 214, and 215.

Much of Defendants' argument is premised on their contention that FGG is not a true defendant. The Complaint refers FGG not just as a defendant. It is also a shorthand for all of the Defendants. Throughout the Complaint, FGG and, by extension, all of the Defendants are alleged to have engaged in various acts of misleading investors, deception, and fraud. The concept that the NAV may also have been inaccurate fits within the scope of these allegations, at the very least as a corollary. As BVI law would allow the Trustee to proceed against most of the Defendants, there is a genuine conflict between New York and BVI law on unjust enrichment.

---

[8] *See supra* note 4.

"It is well settled that New York has long recognized the use of 'center of gravity' or 'grouping of contacts' as the appropriate analytical approach to choice of law question in contract cases. The purpose of grouping contacts is to establish which [jurisdiction] has the most significant relationship to the transaction and the parties." *In re Liquidation of Midland Ins. Co.*, 16 N.Y.3d 536, 543–44, 947 N.E.2d 1174, 923 N.Y.S.2d 396 (2011) (cleaned up). Quasi-contract claims, including unjust enrichment, fit within this paradigm. *See Zoll v. Ruder Finn, Inc.*, No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004); *see also* Restatement (Second) Conflicts of Laws § 221(1) ("In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the [jurisdiction] which, with respect to that issue, has the most significant relationship to the occurrence and the parties"). To determine the law to be applied, the contacts to be considered include:

> (a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship, (b) the place where the benefit or enrichment was received, (c) the place where the act conferring the benefit or enrichment was done, (d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) Conflicts of Laws § 221(2). "These contacts are to be evaluated according to the relative importance with respect to the particular issue." *Id.*

The Trustee is acting on behalf of Fairfield Sentry, a British Virgin Islands company. Defendants include FGG, which is an alleged *de facto* partnership[9] with a principal place of business in New York; FG Limited, which is a Cayman Islands company; FG Bermuda, which is a Bermuda company; FG Advisors, which is a Delaware limited liability company; Fairfield International Managers, Inc., which is a Delaware corporation; and six individuals with varying

---

[9] Defendants dispute that this was properly alleged by Plaintiff. The Court discusses same *infra*.

ties to New York, including citizens of Canada and the United Kingdom. Defendant companies

are all alleged to conduct business from New York. The Trustee has alleged that Fairfield Sentry

directly paid Fairfield International Managers, FG Bermuda, and FG Limited, who in turn paid

FGG, Fairfield International Managers, FG Advisors, and all of the individuals. SAC ¶ 252.

Given the multiplicity of Defendants, the relationship was centered on Fairfield Sentry in the

British Virgin Islands, which is also where the alleged act conferring the benefit or enrichment—

payment—was done. Those payments were then received and distributed by companies having

ties to the Cayman Islands, Bermuda, Delaware, and New York to entities and individuals having

ties to Delaware, New York, Canada, the United Kingdom, and Spain. Given that the enrichment

is alleged to have reached many places besides New York, the factors favor the origination point

of those payments: the British Virgin Islands. BVI law applies. Under BVI law, the unjust

enrichment count must be dismissed against FG Limited and FG Bermuda. For reasons already

stated, the Trustee has adequately pled unjust enrichment against the other Defendants.

### e) Fifth Claim: Constructive Trust Against All Defendants

Defendants, citing New York law, also argue that the Trustee's constructive trust claim

must be dismissed, as it is not a cause of action. The Trustee opposed this argument mostly on

the basis of New York law. In response, the Defendants again pressed their argument that a

constructive trust is only appropriate where a defendant knows that the NAV is wrong. In

supplemental briefing, the Trustee added that "[a] constructive trust under BVI law provides

relief to third-party recipients of company funds wrongfully paid out in breach of a duty,

provided that the defendants knew about the breach or otherwise received payment in bad faith."

Following the same two-step approach to determine the appropriate law, the Court notes

that New York law and English law are not the same with regards to constructive trusts. *See*

*Westdeutsche Bank v. Islington L.B.C.*, [1996] UKHL 12, 2 AC 669, 714 (opinion of Lord Browne-Wilkinson) ("[T]he New York law of constructive trusts has for a long time been influenced by the concept of a <u>remedial</u> constructive trust, whereas hitherto English law had for the most part only recognized an institutional constructive trust.").  Moving to step two, the "most significant relationship" analysis is the same as with unjust enrichment, as both are claims for restitution.  BVI law applies to the constructive trust claim.  For the same reason that Defendants' NAV argument, specifically the knowledge requirement, fails with regards to unjust enrichment at this stage, it fails here, too.  Unlike with the unjust enrichment claim, Defendants have provided no reason or authority under BVI law why FG Limited and FG Bermuda should be dismissed due to the breach of contract claims.  On that basis, the Court will decline to dismiss the constructive trust claim as against any of Defendants.

**f)  *De facto partnership* or Partnership by Estoppel**

The Trustee alleges that the following individuals are partners in an entity known as FGG: Noel; Tucker; and Piedrahita; Mark McKeefry, FGG's Chief Legal Officer and Chief Operating Officer; Daniel Lipton, FGG's Chief Financial Officer; Vijayvergiya, FGG's Head of Risk Management; Gordon McKenzie, FG Bermuda's Controller; Robert Blum, FGG's Chief Operating Officer until 2005; Harold Greisman, FGG's Chief Investment Officer; Corina Noel Piedrahita, FGG's Head of Client Services and Investor Relations; Richard Landsberger; Philip Toub; Andrew Smith; Gregory Bowes; Lourdes Barreneche; Cornelis Boele; Harold Greisman; Jacqueline Harary; Maria Teresa Pulido Mendoza; Charles Murphy; and Santiago Reyes.[10]  SAC ¶ 4.  The Trustee alleges that FGG's principal place of business was in New York where it maintained an office at 919 Third Avenue.  *Id.*

---

[10]  The Defendants Lourdes Barreneche, Robert Blum, Cornelis Boele, Harold Greisman, Jacqueline Harary, Richard Landsberger, Charles Murphy, Daniel Lipton, Mark McKeefry, Santiago Reyes, Andrew Smith, and Maria

Since the Complaint contains allegations that FGG was a partnership located in New York and doing business in New York, and since the parties have not argued that foreign law should apply to this claim, New York law applies.

The Trustee alleges that while Defendants "appeared to be separate and discrete" on paper, "FGG operated as a "flat organization"—a single cohesive unit steered by Noel, Tucker, and Piedrahita." SAC ¶ 62.  The partners allegedly operated "in unison" and FGG allegedly held itself out and operated as a *de facto* partnership in brochures. SAC ¶ 64.

According to the Complaint, the FGG partners: "(i) shared, on a *pro rata* basis, the profits and losses realized by the FGG entities; (ii) made *pro rata* contributions to the capital of FGG entities; (iii) intended to carry on as co-owners of FGG with the common goal of earning a profit; and (iv) participated in the management of FGG."  SAC ¶ 65.  And the main purpose of FGG was allegedly to invest in BLMIS and maintain and manage the relationship with Madoff. SAC ¶ 66.

At oral argument on this motion, the Defendants urged this Court to follow the *Kidz Cloz* court's interpretation of the fourth element, which focuses on the parties' intent.  *Kidz Cloz Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004); Tr. at 116.  Defendants ask the Court to inquire "whether the parties have so joined their property, interests, skills, and risks that their contributions have become one and their commingled properties and interests have been made subject to each of the others' actions, on the trust and inducement that each would act for their joint benefit." *Zeising v. Kelly*, 152 F. Supp. 2d 335, 349 (S.D.N.Y. 2001) (quoted by *Kidz Cloz*).  The procedural posture of *Kidz Cloz* was summary judgment, not a motion to dismiss.  As Defendants are aware, a court evaluates evidence (or lack thereof) on a motion for summary

---

Teresa Pulido Mendoza have been dismissed with prejudice from this action by stipulation. *See* So Or'd Stip., ECF No. 95.

judgment.  Before the Court is a motion to dismiss and the Court must accept the allegations

contained in a complaint as true and read them in a light most favorable to the Plaintiff.

Intent of the Defendants to form FGG is clear from the complaint, which lays out a rather

lengthy story of familial relations knowingly cashing in on a fraudulent scheme orchestrated by

Madoff.  Whether evidence will bear this will be determined after evidence is presented.  Intent

to form a "partnership" in order to earn tremendous profits while hiding behind shell

corporations is well pled in the Complaint.

These allegations are enough to maintain a cause of action for *de facto* partnership under

the standard used by federal courts in this district. SAC ¶ 31-72.  The Court in *Anwar* stated that

"[a]dequately alleging a partnership requires showing four elements: (1) the parties' sharing of

profits and losses; (2) the parties' joint control and management of the business; (3) the

contribution by each party of property, financial resources, effort, skill, or knowledge to the

business; and (4) the parties' intention to be partners." *Anwar v. Fairfield Greenwich Ltd.*, 728 F.

Supp. 2d 372 (S.D.N.Y. 2010) (citing *Kidz Cloz, Inc. v. Officially for Kids. Inc*., 320 F. Supp. 2d

164, 171 (S.D.N.Y.2004)).

While federal courts refer to "elements" when determining whether a partnership exists,

the New York Appellate Division, Second Department, has stated that a court should consider "a

series of *factors*" to determine whether or not a partnership exists, including, but not limited to,

"(1) sharing of profits, (2) sharing of losses, (3) ownership of partnership assets, (4) joint

management and control, (5) joint liability to creditors, (6) intention of the parties, (7)

compensation, (8) contribution of capital, and (9) loans to the organization." *Brodsky v. Stadlen*,

138 A.D.2d 662, 663 (N.Y. App. Div. 2d Dep't 1988) (emphasis added); *see also DeCristofaro*

*v. Nest Seekers East End*, *LLC*, No. 35876–11, 2017 WL 350803, at *6 (N.Y. Sup Ct. Jan. 11,

2017) (same); *Hammond v. Smith*, No. 2008/02441, 2016 WL 1708522, at *3 (N.Y. Sup. Ct. Apr. 22, 2016) ("No one factor is determinative; it is necessary to examine the parties' relationship as a whole.") (quoting *Kyle v. Brenton*, 184 A.D.2d 1036, 1036 (N.Y. App. Div. 4th Dep't 1992) (citing *Martin v. Peyton*, 246 N.Y. 213 (N.Y. Ct. App. 1927) (stating that to determine if a partnership exists facts should be weighed "in connection with all the rest"))). "No one characteristic of a business relationship is determinative in finding the existence of a partnership in fact." *Brodsky v. Stadlen*, 138 A.D.2d 662, 663 (N.Y. App. Div. 2d Dep't 1988). The use of the term "factors," rather than "elements," by New York courts implies that a party can prove the existence of a *de facto* partnership without meeting each of the "elements" and underscores the need for the Court to allow this cause of action to proceed to discovery.

Similarly, a partnership by estoppel can be established by the showing that 1) there is "a representation that the partnership exists" and 2) "that the injured party relied on this representation to his or her detriment." *Ads Plus Advert., Inc. v. Ault*, 928 F. Supp. 2d 683, 692-93 (W.D.N.Y. 2013) (cleaned up). "Partnership by estoppel should not be lightly invoked and generally presents issues of fact." *First Am. Corp. v. Price Waterhouse LLP*, 988 F.Supp. 353, 358 (S.D.N.Y. 1997).

Defendants argue that the Trustee has not adequately pled the second element of partnership by estoppel—that Fairfield Sentry relied on FGG's representation as partners to its detriment. The Complaint contains a 46-page narrative extensively explaining how FGG knowingly created and managed Fairfield Sentry as a buffer so that FGG could profit from Madoff's and BLMIS's fraudulent scheme. SAC ¶ 7–224. This includes the drafting and signing of the IMAs at issue in this dispute, whereby Fairfield Sentry was contractually obligated to invest in the Ponzi scheme and, as a "shell entity," Fairfield Sentry was set up by FGG to

ultimately take the fall for FGG's decisions.  SAC ¶ 37–49.  When the Complaint is read as one cohesive document, the allegations are pled with sufficient detail to overcome a motion to dismiss.

**g)** *Ex turpi causa non oritur actio* **under BVI law**

The *in pari delicto* doctrine has been briefed by the parties under New York law.  The Court has determined that BVI law applies to both equitable causes of action.[11]  Thus, the proper doctrine to be applied is *ex turpi causa non oritur actio* also known as the illegality doctrine.  *See U.S. v. Barry Fischer L. Firm, LLC*, 10 Civ. 7997 (TPG), 2012 WL 591396, at *8 (S.D.N.Y. Feb. 23, 2012). (stating that *ex turpi causa non oritur actio* is a defense under BVI law)  Under British law, the illegality doctrine is not applied nearly as strictly as it is in New York.

In 2016, the Supreme Court of the United Kingdom stated the following regarding the doctrine:

> The essential rationale of the illegality doctrine is that it would be contrary to the public interest to enforce a claim if to do so would be harmful to the integrity of the legal system (or, possibly, certain aspects of public morality, the boundaries of which have never been made entirely clear and which do not arise for consideration in this case). In assessing whether the public interest would be harmed in that way, it is necessary a) to consider the underlying purpose of the prohibition which has been transgressed and whether that purpose will be enhanced by denial of the claim, b) to consider any other relevant public policy on which the denial of the claim may have an impact and c) to consider whether denial of the claim would be a proportionate response to the illegality, bearing in mind that punishment is a matter for the criminal courts. Within that framework, various factors may be relevant, but it would be a mistake to suggest that the court is free to decide a case in an undisciplined way. The public interest is best served by a principled and transparent assessment of the considerations identified, rather by than the application of a formal approach capable of producing results which may appear arbitrary, unjust or disproportionate.

*Patel v. Mirza*, [2016] UKSC 42, at ¶ 120.

---

[11] *See Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 477 (N.Y. Ct. App. 2010) (Cupatrick, J. dissenting) ("[U]nder New York law, in pari delicto is an affirmative defense, not a matter of standing . . . .").

Under the illegality doctrine, a Court must consider whether the purpose of the doctrine would be transgressed by application and whether application would affect public policy. This doctrine, when used as a defense by Defendants, takes into consideration a "range of factors" and the Court cannot determine whether it bars the Trustee's equitable claims at this early stage of litigation. *Patel v. Mirza*, [2016] UKSC 42, at ¶ 91; *see also In re Fairfield Sentry Ltd.*, 596 B.R. 275, 298 (Bankr. S.D.N.Y. 2018) ("*Ex turpi* is a flexible doctrine.").

The Court must deny Defendants' Motion to Dismiss on this issue as it has not been properly brought before the Court and, even if it were raised by Defendants under British law, the equitable claims would survive a motion to dismiss.

### h) Personal Jurisdiction: Whether, under Federal Rule of Civil Procedure 12(b)(2) there is Personal Jurisdiction Over Vijayvergiya and Piedrahita?[12]

A claim for relief must be dismissed under Federal Rule of Civil Procedure 12(b)(2) if the Court lacks personal jurisdiction over a defendant. To survive a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that a *prima facie* case for personal jurisdiction exists. *Dorchester Fin. Sec., v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). When a "foreign defendant has not consented to jurisdiction by filing a proof of claim in the bankruptcy case, the plaintiff must show that 'the foreign defendant has the requisite minimum contacts with the United States at large' to satisfy Fifth Amendment due process." *Picard v. Chais (In re Bernard L. Madoff Inv. Sec. LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010) (citing *Cruisephone, Inc. v. Cruise Ships Catering & Servs., N.V. (In re Cruisephone, Inc.)*, 278 B.R.

---

[12] The Trustee alleges, "This Court has personal jurisdiction over all of the Defendants pursuant to N.Y. C.P.L.R. 301 and 302 and Bankruptcy Rule 7004." SAC ¶ 16. Section 301 is New York's general jurisdiction statute. Section 302 is its long-arm statute. When jurisdiction is satisfied through Bankruptcy Rule 7004, a bankruptcy court need not address its state's long-arm statute. *See In re Lehman Bros. Holdings.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015).

325, 331 (Bankr. E.D.N.Y. 2002)).[13]  At this preliminary stage, "the plaintiff's prima facie

showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ,*

*S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*,

902 F.2d 194, 197 (2d Cir. 1990)).

The due process analysis is a two-step inquiry that focuses on (1) minimum contacts and

(2) whether jurisdiction will be reasonable. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316,

(1945).  In ruling on a motion to dismiss, the Court must view the evidence "in the light most

favorable to the Trustee and resolve all factual disputes in the Trustee's favor." *Picard v. Chais*,

440 B.R. at 279.  For the reasons set forth below, the Court finds that at this stage—motion to

dismiss—the Trustee meets his burden.

There are two types of jurisdiction that satisfy minimum contacts: specific jurisdiction

and general jurisdiction.[14] *Cromer Fin. v. Berger*, 137 F. Supp. 2d 452, 473 (S.D.N.Y. 2001).

Specific jurisdiction exists when the defendant "purposefully direct[s] his activities at residents

of the forum" and the underlying cause of action "arises out of or relates to those activities." *Id.*

(citing *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 472-73, (1985)). The "purposeful

availment" prong is satisfied when the defendant's contacts with the forum state "proximately

result from actions by the defendant *himself* that create a 'substantial connection' with the forum

state." *Burger King*, 471 U.S. at 475. This ensures that the defendant will not be subject to

jurisdiction due to "random, fortuitous, or attenuated contacts." *Id.*  The "arises out of or relates

to those activities" prong may be satisfied when "defendant's allegedly culpable conduct

---

[13] In adversary proceedings, courts must determine whether the defendant has minimum contacts with the United States, rather than with the forum state. *See In re Lehman Bros. Holdings.*, 535 B.R. 608, 619 (Bankr. S.D.N.Y. 2015); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009). Here, the Trustee argues that Defendants have minimum contacts with the United States and New York. The Court finds that both are met.

[14] At the hearing on February 10, 2021, Trustee's counsel stated that argument was focused on specific jurisdiction over Vijayvergiya. Tr. at 140:23-141. As to Piedrahita, the Trustee reserved the right to seek jurisdictional discovery to unearth whether general jurisdiction exists.  Tr. at 141:25. The Court grants this request.

involves at least in part financial transactions that touch the forum." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 592 U.S. ____, No. 19-368, slip. op. at 8 (Mar. 25, 2021) ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

The Defendants' Motion to Dismiss argues that the Complaint does not properly allege personal jurisdiction over Vijayvergiya and Piedrahita. The Motion seeks to dismiss all claims against Vijayvergiya and Piedrahita. The Motion states that the Complaint is devoid of concrete "suit related" contacts required for personal jurisdiction. Memo of Law at 31–32, ECF No. 99. That is not so. At this stage, the Trustee has made a *prima facie* showing that specific personal jurisdiction exists. The Complaint successfully alleges that Vijayvergiya and Piedrahita purposefully availed themselves of New York and the United States.

**a) Vijayvergiya**

**i. Purposeful Availment**

The Trustee seeks to recover around $919 million in damages from the Defendants, which includes Vijayvergiya. The Trustee alleges that Vijayvergiya is a citizen of Canada "who conducts or conducted business in New York." SAC ¶ 13. The Trustee alleges that in June 2003, Vijayvergiya was hired to enhance public perception of FGG's risk monitoring capabilities. SAC ¶ 99. Initially, Vijayvergiya was Vice President and Risk Manager of FG Bermuda. *Id.* The Trustee further alleges that FGG made Vijayvergiya its Chief Risk Officer and placed him in charge of FGG's Risk Management Division in New York. SAC ¶ 108. Despite having the title of Risk Manager, the Trustee alleges that Vijayvergiya failed to perform due diligence when reviewing BLMIS's trades and failed to hold BLMIS to the same standards it

held to other investment managers.  SAC ¶¶ 101–102.  The Trustee also alleges that

Vijayvergiya "spoke to BLMIS over 500 times," half of those conversations with Madoff

himself.  Viewing these numerous allegations in the Trustee's favor, the court finds that

Vijayvergiya purposefully availed himself of the benefits and protections of both New York and

the United States.

### ii) Arising out of

The Trustee has also satisfied the "arising out of" prong.  The Trustee asserts unjust

enrichment and constructive trust claims against Vijayvergiya and alleges that over a period of 5

years, Vijayvergiya actively coordinated with Madoff and other FGG partners.  SAC ¶ 57.  As

FGG's Chief Risk Officer, Vijayvergiya received management and performance fees despite

allegedly failing to perform due diligence when reviewing BLMIS's trades.  SAC ¶¶ 101-102.

Vijayvergiya's alleged active coordination with Madoff and his failure to perform due diligence

in New York give rise to the constructive trust and unjust enrichment claims.

### iii) Reasonableness

After the "minimum contacts" analysis, courts determine whether those contacts "may be

considered in light of other factors to determine whether the assertion of personal jurisdiction

would comport with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 476 (1985) (internal quotation marks omitted).  The "reasonableness" factors include

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2)
> the interests of the forum state in adjudicating the case; (3) the plaintiff's interest
> in obtaining convenient and effective relief; (4) the interstate judicial system's
> interest in obtaining the most efficient resolution of the controversy; and (5) the
> shared interest of the states in furthering substantive social policies.

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).  When

purposeful availment has been satisfied, the burden shifts to the defendant to present a

"compelling case" that jurisdiction would be unreasonable under the circumstances. *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). Having shown that Vijayvergiya purposefully availed himself of the benefits and protections of the forum, the burden is now on Vijayvergiya to present a "compelling case" that jurisdiction is unreasonable. *Id.* Here, Vijayvergiya cannot present a compelling case.

Vijayvergiya's main contention is that defending this action in New York would create a substantial burden on him. Memo of Law at 31–33, ECF No. 99. Vijayvergiya states that most of his "records, files, or witnesses with information about the litigation" are not located in New York. *Id.*

Vijayvergiya is a Canadian citizen who conducted business for FG Bermuda, a foreign corporation. That does not mean that he can escape personal jurisdiction in this court. Any burden imposed on Vijayvergiya is substantially outweighed by the forum state's interest in adjudicating the case and the Plaintiff's interest in obtaining convenient and effective relief. The Trustee has adequately alleged that Vijayverigya was a partner of FGG,[15] a company based in New York. Moreover, BLMIS was a New York company and its liquidation proceeding is pending before the Court. Courts in the Southern District of New York have routinely held that the forum and the Trustee have a strong interest in litigating BLMIS adversary proceedings in the United States. *Sec Inv'r. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 119 (Bankr. S.D.N.Y. 2011) *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re Bernard L., Madoff Inv. Sec. LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009).

---

[15] The Court finds that FGG's partners' contacts are imputed to Vijayverigya. "Where a court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has personal jurisdiction over all of the general partners." *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ.917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003).

Vijayverigya has not made a "compelling case" showing that jurisdiction is unreasonable.

**b) Piedrahita**

**i) Purposeful Availment**

Piedrahita lives in Spain and is a citizen of the United Kingdom. Tr. at 141:8-9. The Trustee alleges that Piedrahita was a financial investment marketer with Littleton Associates, a New York based investment management firm. SAC ¶ 51. The Trustee then alleges that in October 1997, Piedrahita combined Littleton Associates with FGG and became a "founding partner." SAC ¶ 52. As a founding partner and financial investment marketer, Piedrahita used his skills to market FGG and travel the world to recruit investment capital. SAC ¶ 56. Piedrahita maintained an office in FGG's New York headquarters and "regularly met with Madoff at BLMIS's headquarters, hosted dinners and client events in New York, attended FGG Executive Committee and Board of Directors meetings in New York, and signed investor communications using a New York address block." SAC ¶ 54. Piedrahita also maintained numerous residences in New York between 2001 and 2008. SAC ¶ 58. Viewing these numerous allegations in the Trustee's favor, the court finds that Piedrahita purposefully availed himself of the benefits and protections of both New York and the United States.

Piedrahita's purposeful availment conduct also satisfies the "arising out of" prong. Like Vijayvergiya, the Trustee asserts unjust enrichment and constructive trust claims against Piedrahita. Like Vijayvergiya, Piedrahita allegedly received management and performance fees for his role in the FGG operation. The Trustee's claims seek a return of those fees. While much of Piedrahita's work was done abroad recruiting investment capital, the Trustee alleges that Piedrahita also spent a substantial amount of time in New York. Piedrahita's alleged contacts with Madoff and other "founding partners" in New York give rise to the unjust enrichment and

constructive trust claims and "involve at least in part financial transactions that touch the forum."

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 151 (2d Cir. 2019).[16]

### ii) Reasonableness

Having determined that the Trustee has sufficiently pled that Piedrahita purposefully

availed himself of the benefits and protections of the forum, the burden is now on Piedrahita to

present a "compelling case" that jurisdiction is unreasonable. *Burger King Corp., v. Rudzewicz*,

471 U.S. 462, 472–73 (1985). Piedrahita cannot present a compelling case.

Piedrahita relies on his U.K. citizenship to avoid this court's personal jurisdiction over

him. Piedrahita argues that it would be unreasonable to exercise personal jurisdiction over a

"foreign defendant whose alleged conduct occurred overseas on behalf of a foreign fund." Memo

of Law at 34, ECF No. 99. Once again, any burden imposed on Piedrahita is substantially

outweighed by the forum state's interest in adjudicating the case and the plaintiff's interest in

obtaining convenient and effective relief. The Court also finds Defendants' cited cases to be

unpersuasive in light of other, more relevant decisions that find personal jurisdiction over a

foreign defendant in circumstances similar to this one. *See Sec Inv'r. Prot. Corp. v. Bernard L.

Madoff Inv. Sec., LLC*, 460 B.R. 106, 119 (Bankr. S.D.N.Y. 2011) *aff'd*, 474 B.R. 76 (S.D.N.Y.

2012); *Picard v. Chais (In re Bernard L., Madoff Inv. Sec. LLC)*, 440 B.R. 274, 278 (Bankr.

S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re Bernard L. Madoff Inv. Sec. LLC)*, 418 B.R.

75, 82 (Bankr. S.D.N.Y. 2009). The Trustee is permitted to conduct jurisdictional discovery to

determine whether general jurisdiction exists over Piedrahita.

---

[16] Like Vijayvergiya, the Trustee has sufficiently alleged that partnership jurisdiction exists over Piedrahita.

### Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted as to FG Limited and FG Bermuda with respect to Count Four and is denied in all other respects. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: March 25, 2021
Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris
Chief U.S. Bankruptcy Judge**

Page **32** of **32**